UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAMEON L. JACOB,

        Plaintiff,                Case No. 2:19-cv-10435
                                 District Judge Stephen J. Murphy

v.                             Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

        Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 12),
GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF
No. 15) and AFFIRM THE COMMISSIONER'S DECISION**

**I.    RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment

(ECF No. 15) and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

Plaintiff, Dameon L. Jacob, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for Disability Insurance (DI) benefits.

This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (ECF No. 12), the
Commissioner's cross-motion for summary judgment (ECF No. 15), Plaintiff's
reply (ECF No. 16) and the administrative record (ECF No. 9).

## A.   Background and Administrative History

Plaintiff alleges his disability began on July 13, 2015, at the age of 41.  (R.
at 194.)  In his disability report, he lists degenerative disc disease and scoliosis as
limiting his ability to work.  (R. at 197.)  His application was denied on June 29,
2016.  (R. at 63-70.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R.
at 75-76.)  On May 16, 2018, ALJ John Dodson held a hearing, at which Plaintiff
and a vocational expert (VE), Larry S. Stokes, testified.[1]  (R. at 29-52.)  On June
27, 2018, ALJ Dodson issued an opinion, which determined that Plaintiff was not
disabled within the meaning of the Social Security Act.  (R. at 7-21.)

Plaintiff submitted a request for review of the hearing decision/order.  (R. at
153-57.)  However, on January 11, 2019, the Appeals Council denied Plaintiff's
request for review.  (R. at 1-6.)  Thus, ALJ Dodson's decision became the
Commissioner's final decision.

---

[1] In the hearing transcript, the VE is listed as Larry S. Stokes (R. at 31-32), but in
his decision, the ALJ lists the VE as John N. Stokes (R. at 10), which matches the
name on the VE resume appearing in the record (R. at 216).  The Court will
assume this is the same person.

Plaintiff timely commenced the instant action on February 13, 2019.  (ECF No. 1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 134 pages of medical records, which were available to the ALJ at the time of his June 27, 2018 decision. (R. at 20-21, 266-400 [Exhibits 1F-9F].)  These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 13, 2015, the alleged onset date.  (R. at 12.) At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease and scoliosis.  (R. at 13.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (R. at 13.) **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and determined that Plaintiff had the RFC:

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

> . . . to perform sedentary work. except no ropes, ladders, or scaffolds; occasional remaining posturals; sit/stand option 2 times per hour; occasional overheard reaching bilaterally; no concentrated exposure to hazards; use of assistive device to ambulate.

(R. at 13-15.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (R. at 15.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as surveillance system monitor, telephone info clerk, and document preparer. (R. at 16.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since July 13, 2015.  (R. at 16.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable

4

mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.  Analysis

Plaintiff alleges, in his summary judgment motion and reply brief, that the ALJ's decision is marred by legal error and unsupported by substantial evidence because: (1) the ALJ failed to properly weigh the opinions of Plaintiff's treating physician, Dr. Preston Thomas, and consultative examiner, Dr. Leonidas Rojas; (2) the ALJ erred at Step 2 by failing to find Plaintiff's cervical and left shoulder impairments severe; and (3) the "ALJ erred in failing to specify, in both his hypothetical questions and his [RFC] determination, the frequency with which claimant needed to alternate sitting and standing."  (ECF No. 12, PageID.449-460; ECF No. 16, PageID.498-503.)  The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the ALJ's decision.  (ECF No. 15, PageID.478-497.)  I will address each argument in turn.

### 1.  Substantial evidence supports the weight afforded to the opinions of Dr. Thomas and Dr. Rojas

#### a.  Plaintiff's medical background

In his disability report, Plaintiff listed degenerative disc disease and scoliosis as limiting his ability to work.  (R. at 197.)  As the result of his degenerative disc disease, Plaintiff underwent spinal fusion surgery of the L4-L5 disc in November 2015.  (R. at 35-36, 323-332 [Exhibit 3F].)

#### b.  Dr. Thomas's treatment and findings

6

Dr. Thomas was Plaintiff's treating physician at Drayton Clinic.  (Exhibits 6F, 7F, 8F, 9F.)  On August 25, 2016, he completed both a medical source statement (R. at 369-373 [Exhibit 6F]) and a medical questionnaire (R. at 362-368 [Exhibit 7F]) on Plaintiff's behalf.  In the medical source statement, Dr. Thomas indicated that he had been treating Plaintiff, diagnosed with scoliosis, back pain and lumbar radiculopathy for three years, and that Plaintiff suffered from constant disabling pain which had not been relieved by his recent surgery.  (R. at 369 [Exhibit 6F].)  Further, Dr. Thomas stated that Plaintiff had significant limitations with reaching overhead, could only occasionally hold his head in a static position, needed an ambulatory aid for walking, and could stand for two hours in an eight-hour day.  (R. at 370-371 [Exhibit 6F].)  In the medical questionnaire, Dr. Thomas listed Plaintiff's diagnoses as chronic back pain and "s/p surgery," and opined that Plaintiff is totally disabled and physically unable to work.  (R. at 374-375 [Exhibit 7F].)

### c.    Dr. Rojas's findings

Dr. Rojas conducted a consultative examination of Plaintiff on June 20, 2016, and found that following Plaintiff's November 2015 fusion surgery:

> He has less back pain and less numbness but he still is not able to walk farther than half a block or just to the car.  He is able to climb stairs slowly.  Since his surgery he has been using a cane and he continues to take the same amount of pain medication.  The back pain is aggravated by sitting, standing, walking or attempting to bend.  For about a year also he has had tightness on the left side of the neck.

7

[A]nd he has been found to have DDD on the cervical spine, with a
"pinched nerve" on the left side.

(R. at 362 [Exhibit 5F].)  Further, Dr. Rojas listed Plaintiff's diagnoses as: (1) s/p

fusion L4-L5 with left-sided radiculopathy, and (2) DDD of the cervical spine with

left-sided radiculopathy, and stated that Plaintiff got around with a cane.  (R. at 363

[Exhibit 5F].)

### d.  The ALJ gave Dr. Thomas's opinion "little weight" and Dr. Rojas's opinion "limited weight"

The ALJ considered Dr. Thomas's August 2016 medical source statement

and medical questionnaire, and gave them "little weight," stating:

> Dr. Thomas Preston completed medical source statements (6F; 7F).
> These opinions are given little weight.  They are not supported by the
> medical records and are not consistent with the evidence as a whole.

(R. at 14.)  Further, the ALJ referenced medical records completed by Dr. Thomas,

and found:

> The claimant treated with a primary care provider (8F).  There is a gap
> in treatment between October 2015 and August 2016 (8F).  The
> claimant reported pain, but a physical examination was generally
> unremarkable (8F/11-12).  He requested for Social Security papers to
> be completed (8F/7).  Subsequently, there is a gap again from August
> 2016, when the claimant requested disability paperwork to be
> completed, until April 2017 (8F).

(R. at 14.)

The ALJ also considered Dr. Rojas's June 2016 opinion and gave it "limited

weight," stating:

8

The claimant underwent a consultative examination (5F). The examiner noted status post lumbar fusion and degenerative disc disease (5F/2). He also completed a current abilities report (5F/3). This opinion is given limited weight. Although the examiner evaluated the claimant, he is not a treating source and only saw the claimant on one occasion.

(R. at 14.)

### e. RFC and opinion of treating source

The plaintiff bears the burden of proof at Steps 1-4, including proving his RFC. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146 (6th Cir. 1990), and *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987)); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving her lack of residual functional capacity.") The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform[.]" *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. §§ 404.1527(b), 416.927(b).[3] The

---

[3] These regulations apply to claims filed before March 27, 2017.

regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). ALJs "will consider . . . administrative medical findings and medical evidence from our Federal or State agency medical or psychological consultants . . . [,]" but "are not required to adopt any prior administrative medical findings[.]" 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Blakley*, 581 F.3d at 408.

> Medical opinions from treating sources about the nature and severity of an individual's impairment(s) are entitled to special significance and may be entitled to controlling weight. If a treating source's medical opinion on an issue of the nature and severity of an individual's impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the adjudicator must give it controlling weight.

S.S.R. 96-8p at *7. In other words, an ALJ "may not substitute his own medical judgment for that of the treating physician where the opinion of the treating

10

physician is supported by the medical evidence." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quotation marks and citation omitted).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ will consider the following factors when deciding the weight to give to any medical opinion: (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency with the record as a whole; and (5) specialization. 20 C.F.R. § 404.1527(c). And special care must be taken when considering the treating physician's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (if the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements).

However, while an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's medical opinion," 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight[,]" *Friend v. Comm'r of Soc. Sec*, No. 09-3889, 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam) (internal quotation omitted), there is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6), *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010). In other words, the regulations

do not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson*, 378 F.3d at 547). *See also Betty v. Comm'r of Soc. Sec.*, No. 15-cv-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report and recommendation adopted*, No. 15-CV-10734-DT, 2016 WL 1090554 (E.D. Mich. Mar. 21, 2016).

The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that [he] is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004).

12

*Wilson*, 378 F.3d at 544-45.  Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

### f.    Dr. Thomas

The ALJ provided good reasons for affording Dr. Thomas's opinions "little weight," and substantial evidence supports his determination.  Again, the ALJ afforded Dr. Thomas's opinions "little weight" because "[t]hey are not supported by the medical records and are not consistent with the evidence as a whole" (R. at 14), two of the *Wilson* factors discussed above, and listed the contradictory evidence in the surrounding paragraphs.

First, the ALJ discussed Plaintiff's significant gaps in treatment.  (R at 14-15.)  Such a consideration is appropriate.  *See Tate v. Comm'r of Soc. Sec.*, 467 F. App'x 431, 433 (6th Cir. 2012) (substantial gaps in treatment may be considered when weighing a treating physician's opinion).  And consistent with the ALJ's findings, a review of the record reveals that following his November 2015 surgery, Plaintiff only saw Dr. Thomas sporadically: in August 2016, when he presented with continued pain following the surgery *and requested his disability paperwork* (R. at 384-390), in April 2017, when it was noted that he did not take his medications as directed (R. at 381-383), in June 2017, following an automobile

13

accident (R. at 378-380), and in May 2018 for an MRI of the cervical spine (R. at 397-400), which the ALJ characterized as not revealing any significant abnormalities (R. at 14).  If the ALJ's accurate account of the fact that the long gap in treatment suddenly ended when Plaintiff needed support for his disability claim suggests some level of skepticism, that skepticism seems reasonable.

The ALJ also discussed, in the paragraphs preceding those directly addressing Dr. Thomas's opinion (R. at 14), the progress notes from a February 23, 2016 post-operative follow-up at which: (1) Plaintiff stated that his back pain had improved following his surgery and denied numbness or weakness in his extremities (R. at 341 [Exhibit 4F]); (2) an x-ray showed intact hardware and proper alignment (R. at 342 [Exhibit F]); and, (3) Plaintiff was advised that he had *no restrictions* with respect to his back (R. at 342 [Exhibit 4F]).  Each of these findings is supported by the record, and contradicts Dr. Thomas's total disability determination.  (R. at 374-375 [Exhibit 7F].)[4]  Accordingly, substantial evidence supports the ALJ's decision to afford little weight to Dr. Thomas's opinions.

Plaintiff challenges the ALJ's findings by asserting that the February 2016 progress notes referenced by the ALJ to discount Dr. Thomas's opinions contain information consistent with those opinions, and that the x-rays discussed were

---

[4] Whether an individual is ultimately disabled is a determination left to the Commissioner.  20 C.F.R. 404.1527(d).

14

taken too close to the surgery date to provide an accurate assessment of Plaintiff's condition.  (ECF No. 12, PageID.451, citing R. at 342.)  Plaintiff offers no medical support for this latter assertion, and it is unclear what basis the Court would have for making such a scientific finding.  However, where "substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion,'" *Blakley*, 581 F.3d at 406 (citation omitted), and the Court cannot "reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ," *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011).

Plaintiff also argues that the ALJ mischaracterized Plaintiff's May 2018 MRI results, because the MRI "showed varying degrees of neural foraminal narrowing of the mid cervical spine, most pronounced (moderate) at C5-C6 with degenerative disc disease and multiple levels of bulge discs."  (ECF No. 12, PageID.451-452.)  Nevertheless, even if the ALJ misinterpreted the results, neither Plaintiff nor the MRI report articulate any functional limitations that would mandate work restrictions beyond those listed in the RFC.  *See Jordan*, 548 F.3d at 423 (claimant bears the burden of proving lack of RFC).  Thus, the Court should find no error in the ALJ's analysis of Dr. Thomas's opinion.

### g.    Dr. Rojas

Substantial evidence also supports the ALJ's decision to discount Dr. Rojas's opinion. Although an ALJ should consider the factors listed in 20 C.F.R. § 404.1527(c) when evaluating any medical opinion if the opinion of a treating physician is not afforded controlling weight, 20 C.F.R. § 404.1527(c), the opinion of a consultative examiner is entitled to no special deference like that of a treating physician, *see Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019). In affording Dr. Rojas's opinion "limited weight," the ALJ considered two factors under 20 C.F.R. § 404.1527(c) – that Dr. Rojas was not a treating source and only saw Plaintiff once – neither of which Plaintiff disputes and both of which are legitimate bases for affording it limited weight.

Plaintiff challenges the weight the ALJ afforded to Dr. Rojas's opinion by simply summarizing Dr. Rojas's findings and implying error, but again fails to argue, let alone demonstrate that Dr. Rojas's opinions necessitated a more restrictive RFC. *See Jordan*, 548 F.3d at 423. In fact, as the Commissioner contends, the RFC imposed by the ALJ appears, in large part, consistent with the findings and opinions in Dr. Rojas's consultative examination. For example, Dr. Rojas opined that Plaintiff could sit and stand, though not bend, stoop, carry, push or pull (R. at 364 [Exhibit 5F]), which is consistent with sedentary work (R. at 13). And Dr. Rojas noted Plaintiff's use of a cane to get around (R. at 362-363 [Exhibit

16

5F]), which the ALJ incorporated into the RFC (R. at 13).  Accordingly, the Court

should decline to find error in the ALJ's analysis of Dr. Rojas's opinion.

### 2.    The ALJ did not err at Step 2

At Step 2, the ALJ found the following severe impairments: (1) degenerative

disc disease, and (2) scoliosis.  (R. at 13.)  Plaintiff asserts error because the ALJ

failed to find, at Step 2, that he also suffered from cervical and left shoulder

impairments, and argues that the error cannot be considered harmless because the

ALJ failed to discuss these cervical and left shoulder impairments at Step 3, and

because "at step five, there is no indication that [the ALJ] considered these

impairments when assessing [the] residual functional capacity."  (ECF No. 12,

PageID.455-458; ECF No. 16, PageID.501.)

### a.    Step 2 standard

Step 2 requires the ALJ to determine if a claimant suffers from any severe

impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c).  Plaintiff bears the

burden at Step 2 of establishing that he suffers from a severe impairment.  *See*

*Walters*, 127 F.3d at 529.  An impairment is considered severe if it "significantly

limits your physical or mental ability to do basic work activities[.]"  20 C.F.R. §

404.1520(c).  "An impairment or combination of impairments is found 'not severe'

and a finding of 'not disabled' is made at this step when medical evidence

establishes only a *slight abnormality* or a combination of slight abnormalities

which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered . . . ." S.S.R. 85-28 (emphasis added).

"In the Sixth Circuit, the severity determination is 'a de minimis hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). However, the Step 2 severity analysis is only a threshold determination. Sixth Circuit precedent readily establishes that failure to find an impairment severe at Step 2 of the sequential analysis is not reversible error if the ALJ found another impairment severe and thus continued with the five-step evaluation. *See e.g. Fink v. Astrue*, 253 F. App'x 580, 583-84 (6th Cir. 2007); *Anthony*, 266 F. App'x at 457. Thus, "any alleged omission from the list of severe impairments does not undermine the ALJ's decision" so long as the ALJ considers Plaintiff's "severe and nonsevere impairments in the remaining steps of the sequential analysis." *Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F.Supp.2d 792, 822-23 (E.D. Mich. 2013) (quotation marks and citation omitted). Accordingly, "[t]he fact that some of [the plaintiff's] impairments were not deemed to be severe at step two [may be] legally irrelevant." *Anthony*, 266 F. App'x at 457.

**b.      Analysis**

Initially, I note that Plaintiff failed to meet his burden of establishing that he

suffers from severe (or even non-severe) impairments beyond those found by the

ALJ at Step 2.  *See Walters*, 127 F.3d at 529.  There is no indication that the

degenerative disc disease the ALJ found to be severe did not include degenerative

disc disease of the cervical spine.  And, Plaintiff did not list specific cervical or left

shoulder impairments in his disability report – he listed only degenerative disc

disease and scoliosis as limiting his ability to work, both of which were, in fact,

found to be severe impairments by the ALJ.  (R. at 197; ECF No. 9-2, PageID.44.)

And the only record evidence Plaintiff cites in the argument portion of his brief[5] to

establish the existence of these alleged impairments is his testimony at the hearing

that he has pain radiating from his neck into his left arm (ECF No. 12, PageID.457-

458; ECF No. 16, PageID.501, citing R. at 39), and Dr. Rojas's statement that

Plaintiff suffers from degenerative disc disease of the cervical spine with moderate

weakness on the left upper and lower limbs (ECF No. 12, PageID.457-458; ECF

No. 16, PageID.501, citing R. at 363), neither of which is sufficient to establish

that Plaintiff suffered from a cervical impairment beyond the degenerative disc

---

[5] Plaintiff does provide other record citations for his shoulder and cervical issues in
the factual portion of his summary judgment motion, but did not directly use those
citations to support his argument.

disease found at Step 2, or a left shoulder impairment.  20 C.F.R. § 404.1520(c); *see also Walters*, 127 F.3d at 529.

Nevertheless, even if the ALJ erred at Step 2, any error would be harmless because the ALJ found other impairments severe and continued with the sequential evaluation, considering Plaintiff's severe and non-severe impairments throughout. Plaintiff first takes issue with ALJ's Step 3 determination, arguing that "the ALJ did not discuss any cervical or left shoulder impairments when determining at step three if Plaintiff had an impairment or combination of impairments that meets or equals the Listings" (ECF No. 12, PageID.457), but fails to identify any Listing for which he would have qualified, or any evidence demonstrating that his impairments would have met the requirements for such a Listing.  *See Walters*, 127 F.3d at 529 (claimant bears the burden of proof at Steps 1-4); *see also Henderson v. Comm'r of Soc. Sec.*, No. 14-12675, 2015 WL 2063096, at *2 (E.D. Mich. May 4, 2015) ("[A] plaintiff cannot simply claim that the ALJ erred while leaving it up to the Court to scour the record to support this claim.") (quotation marks and citation omitted).

Second, Plaintiff asserts that there is no indication the ALJ considered his cervical and left shoulder impairments in his RFC determination[6] (ECF No. 12,

---

[6] Plaintiff cites Step 5, but appears to actually be arguing RFC.  *See Kirchner v. Colvin*, No. 12-CV-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC

PageID.455-458; ECF No. 16, PageID.501), but the ALJ did specifically discuss Plaintiff's May 2018 cervical MRI (R. at 14-15), though Plaintiff disagrees with the ALJ's interpretation of the results, and limited Plaintiff to sedentary work (R. at 13).  Further, in the RFC, the ALJ limited Plaintiff to only occasional overhead reaching bilaterally.  (R. at 13.)

Finally, Plaintiff asserts that "[i]n light of the vocational expert's testimony that a restriction that an 'individual can only occasionally maintain one's head or hold one's head static in position, because of cervical problems' is work preclusive . . . [,] limitations resulting from Plaintiff's cervical condition are particularly relevant to his ability to perform a job."  (ECF No. 12, PageID.457, citing R. at 50.)  However, Plaintiff mischaracterizes the VE's testimony.  In actuality, when asked by Plaintiff's counsel "if a hypothetical individual can only occasionally maintain one's head or hold one's head in a static position, because of cervical problems, how, if at all, would that impact upon the jobs, if it all[,]" the VE stated, "I couldn't say that it would affect performance of the job, one way or another, particularly for sedentary work."  (R. at 50.)  Accordingly, Plaintiff's argument lacks merit, and the Court should conclude that no error occurred at Step 2.

---

finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed").

### 3.    The ALJ's sit/stand option was adequately specific

S.S.R. 96-9p, which discuss RFCs for less than a full range of sedentary

work, like that at issue in this case, states:

> An individual may need to alternate the required sitting of sedentary
> work by standing (and, possibly, walking) periodically.  Where this
> need cannot be accommodated by scheduled breaks and a lunch
> period, the occupational base for a full range of unskilled sedentary
> work will be eroded.  The extent of the erosion will depend on the
> facts in the case record, such as the frequency of the need to alternate
> sitting and standing and the length of time needed to stand.  The RFC
> assessment must be specific as to the frequency of the individual's
> need to alternate sitting and standing.  It may be especially useful in
> these situations to consult a vocational resource in order to determine
> whether the individual is able to make an adjustment to other work.

S.S.R. 96-9p.

Plaintiff argues that the "ALJ erred in failing to specify, in both his

hypothetical questions and his residual functional capacity (RFC) determination,

the frequency with which claimant needed to alternate sitting and standing."  (ECF

No. 12, PageID.458.)[7]  Plaintiff is correct that, in the RFC determination, the ALJ

provided a "[s]it stand option 2 times per hour" with no specificity as to the length

of time Plaintiff would need to stand each time, but assuming without deciding that

this omission constitutes error, that error would be harmless here, as the ALJ

---

[7] Plaintiff also asserts that a restriction of standing two times per hour for a couple
of minutes to stretch is not a valid sit/stand option, and is only sedentary work, but
cites no support for this assertion. (ECF No. 12, PageID.458.)

specified a length of time in his hypothetical to the VE, and adopted the VE's

recommendations at Step 5.

    The VE testified that a man of Plaintiff's same age, education, work

experience, and limitations could perform sedentary work, including the jobs of

surveillance monitor, information clerk, and document preparer, and indicated that

his response would not be affected if, as the ALJ posed, the hypothetical individual

had to stand twice an hour *for a couple of minutes each time* just to stretch.  (R. at

45-49.)  The ALJ then incorporated a sit/stand option into his RFC, albeit

indicating only that Plaintiff could stand two times per hour, and found at Step 5,

consistent with the VE's testimony, that Plaintiff could perform the work of a

surveillance system monitor, information clerk, and document preparer.  (R. at 13,

15-16.)  From this, the Court could appropriately assume the ALJ's sit/stand option

of two times per hour was based upon Plaintiff having the option to stretch his legs

for a couple of minutes each time, and should decline to find error.  *See Kornecky*

*v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006) (quoting *Fisher v.*

*Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law

or common sense requires us to remand a case in quest of a perfect opinion unless

there is reason to believe that remand might lead to a different result.").[8]

---

[8] Despite Plaintiff's assertion to the contrary, this case is dissimilar to *Ferguson v.*
*Comm'r of Soc. Sec.*, No. 11-15072, 2013 WL 530868, at *5-6 (E.D. Mich. Jan.
23, 2013), where the Court ultimately remanded for the ALJ to include

In his reply brief, Plaintiff also asserts that the ALJ did not address his need to use a cane when standing,[9] not just ambulating, which is critical given the VE's testimony that the need to grip a cane while working in a standing position would preclude all work. (ECF No. 16, PageID.502.) Preliminarily, I note that "[a]rguments raised for the first time in a reply brief are considered waived." *Grand Traverse Band of Ottawa and Chippewa Indians v. Blue Cross & Blue Shield of Mich.*, 391 F.Supp.3d 706, 715 n. 5 (E.D. Mich. 2019) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). Notwithstanding that waiver, the VE actually testified that, assuming a hypothetical individual similar to Plaintiff would need to stand for 15 minutes and sit for 15 minutes *four times per hour*, and used a cane to stand and walk, that individual would be precluded from the jobs specified. But this is not the type of sit/stand option the ALJ incorporated into the RFC. Accordingly, Plaintiff's argument lacks merit.

## F. Conclusion

Plaintiff has the burden of proof on his statements of error. *Walters*, 127 F.3d at 529 (6th Cir. 1997) ("during the first four steps, the claimant has the burden

---

consideration of an at-will sit/stand option, *Ferguson v. Comm'r of Soc. Sec*, No. 11-15072, 2013 WL 508374, at *1 (E.D. Mich. Feb. 12, 2013), because there, the hypothetical question to the VE failed to specify the frequency ultimately included the RFC. That did not occur here.

[9] Plaintiff provides no record citations for this assertion.

of proof; this burden shifts to the Commissioner only at Step Five.").  Plaintiff has not shown legal error that would upend the ALJ's decision.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment (ECF No. 15), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Dated:  February 11, 2020

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE